COMMINS v. The MINNIE.    See Case No. 9,117.

COMMISSIONER OF PATENTS (MARSH v.).  See Case No. 9,114.

## Case No. 3,065.

### COMMITTEE OF WEST NEW JERSEY SOC. v. MORRIS.

[Pet. C. C. 59.][1]

Circuit Court, D. New Jersey. April Term, 1812.

##### ACCOUNTING BETWEEN PRINCIPAL AND AGENT—COMPENSATION OF AGENT.

Compensation to an agent for the sale and management of estates, the property of absent proprietors, remitting proceeds of sales made by him, and performing all the duties of such an agency.

This was a suit in chancery, the object of which was to have an account against the defendant [Robert Morris], who was the agent for the complainants, for managing their estates in New Jersey and Pennsylvania; and collecting their debts and rents, and selling their lands in those states, from 1784 to 1802. The only disputed item in the defendant's account, was the compensation which he claimed for his services. The former agents in this business had received ten per cent. on sales and remittances, and a per diem allowance for all days employed in the service of the complainants. The material facts are stated in the opinion of the court.

WASHINGTON, Circuit Justice (MORRIS, District Judge, absent). The only question of difficulty, is, whether any contract, fixing the defendant's compensation for services in the business of the complainants, was at any time concluded between the parties; because, if

[1] [Reported by Richard Peters, Jr., Esq.]

there was not, the court feels no hesitation in declaring; that upon the ground of quantum meruit, the extraordinary services of the defendant, his great personal sacrifices as a lawyer in full practice, the privations to which he exposed himself in managing this property, and the great benefits derived by the complainants from his persevering attention, prudence and knowledge; justly entitle him to the compensation which he claims. But, if he has bound himself by contract to accept less, he must be satisfied to abide by that rule.

The question of contract must be decided by the correspondence between the parties, where alone the subject of compensation is to be found. On the 21st July, 1784, the complainants, living in England, by their authorised agent, wrote to the defendant and informed him, they had appointed him their agent to superintend their interests in Pennsylvania and New Jersey; and accompanied their letter with a power of attorney, limited in its terms, and confined to the collection of debts, and rents, settlement of particular accounts, and generally to the securing and preserving of their real property in America. Although the complainants appear to have had but an imperfect knowledge of their affairs in this country, they were nevertheless aware, that the rate of compensation to be allowed the defendant, for the services he was called upon to render under these restricted powers, could not be fixed by any allowance, in the nature of commissions, on the small sums he would have to collect; and therefore they assure him generally, that they will make him a just and honourable satisfaction for the trouble imposed on him. They add, it is true, that "the services of an agent had been established at ten per centum commission on all sales realized by remittances to the society;" but, they are so far from proposing this to him as a rate or compensation in the business then committed to his care, and in a way for the defendant to notice, that they expressly declare it to be inapplicable. It is most apparent, that the complainants, in mentioning this usage, did not mean to intimate that ten per cent. was the customary compensation for collecting and remitting money, including the management and preservation of property, so peculiarly situated as this was; and which required extraordinary trouble, and sacrifices of a nature totally unconnected with the ordinary duties of a collector. First, because, such a statement would have been untrue, and that within the knowledge of the complainants, as appears by the allowance made to their former agents, and particularly to Mr. Hunt, whose account was transmitted with this letter to the defendant: and, secondly, because, if such was the meaning of the complainants, the limited powers sent to the defendant, afforded no good reason why this allowance ought to have been received as satisfactory by the defendant; which, however, they admit to be inapplicable. I understand, then, the usage

spoken of in this letter, as fixing merely the rate of commissions allowed for collecting and remitting money, distinct from the extra trouble of an agent in superintending, recovering, and preserving the property of the principal. The duties are perfectly distinct; and no rate of compensation, which might be just for the performance of one of these duties, could possibly furnish a rule in respect to the other.

Nothing farther seems to have passed between the parties on the subject of compensation, (except a repetition of the general assurance before made, that the complainants would generously remunerate the defendant for his services,) until the 2d November, 1788, when the defendant, in his letter of that date, referring to the complainants' letter of the 21st July, 1784, and repeating what they had then said, as to this matter, draws the distinction between the services which he was called upon to render, and those ordinary duties which belong to an agent, under the character of a collector;—and he suggests the idea of a compensation, proportionable to the nature of his services, in the way of a per diem allowance. This mode of compensating the defendant for his services, prior to the 1st January, 1789, was finally adopted and fixed by the complainants, at seven dollars for each day the defendant had been employed in their service; which being more than the defendant had demanded, they express, in their letter of the 25th March, 1790, a hope that their liberality on this occasion, will be considered by the defendant as an earnest of their wish to reward him fully for his future services. In 1788, the defendant received from the complainants full powers to sell their lands in Pennsylvania and New Jersey; but the difficulties in which the former were entangled, precluded him from selling them until 1792, when the price was fixed by arbitration, on terms very beneficial to the complainants at that time. The purchase money for these lands was paid by instalments; which began in 1793, and continued until the whole was discharged; amounting to a very large sum of money. These sums, as fast as they were received, were regularly remitted to the complainants; and the defendant has charged in his account a commission of ten per cent. on all such sums; but without claiming any other allowance from the 1st January, 1793, on account of these lands; his trouble having ceased in respect to them, by the award in 1792. The New Jersey lands were unsalable, except to an inconsiderable amount; but they continued to demand the care of the defendant, for their preservation against lawless depredation and injury. The defendant has consequently charged in his account, an allowance of seven dollars for every day employed in superintending the interest of the complainants on these days; and also a commission on the rents collected by him, and on the sums received and remitted by him, on the few sales it was in his power to effect. These claims, the court is of opinion, are well founded, and ought to be allowed upon the principle of a quantum meruit, and the absence of any contract on the subject. The defendant admits an error in his account to the amount of —— dollars; and the court is of opinion, that his charge of a sum per day, for preparing his own account, and the papers of the estate, and delivering them over to his successor in 1802, ought not to be allowed; for these were his duties. The decree will be for the balance, which will remain, after deducting from it the balance now appearing to the debit of complainants, by the defendant's account; with interest at seven per cent. from the 1st January, 1803, and the costs.